**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ECHOL WATKINS,<br><br>                          Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>                          Defendant. | Civil Action No: 23-20860 (SDW) (SDA)<br><br>**OPINION**<br><br>January 13, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant Experian Information Solutions, Inc.'s ("Defendant" or "Experian") motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 20 ("MSJ")). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This Court heard oral argument on December 12, 2024.

Defendant moves for summary judgment on Plaintiff's two claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* For the reasons stated herein, Defendant's MSJ is **GRANTED**.

### I.    PROCEDURAL HISTORY

On October 3, 2023, Plaintiff Echol Watkins ("Plaintiff" or "Mr. Watkins") filed a complaint against Defendant alleging two causes of action for failure to follow reasonable procedures and failure to perform a reasonable reinvestigation under the FCRA. (D.E. 1 ("Complaint").) Defendant answered the Complaint on November 14, 2023 (D.E. 7), and the

1

parties proceeded with discovery. Defendant filed the instant MSJ on July 11, 2024, and the parties timely completed briefing. (D.E. 20; 26; 33.)[1]

## II. FACTUAL BACKGROUND[2]

### A. The Fair Credit Reporting Act

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). "Under [the] FCRA, [credit or consumer reporting agencies or 'CRAs'] collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 861 (3d Cir. 2014). Accordingly, the FCRA "imposes a variety of obligations on both furnishers and CRAs." *Id.*; *see also* 15 U.S.C. §1681s-2(b)(1)(A)-(D).

In 1992, Congress passed the Ted Weiss Child Support Enforcement Act, which "amend[ed] the Fair Credit Reporting Act to require the inclusion in consumer reports of information provided to consumer reporting agencies regarding the failure of a consumer to pay overdue child support." Pub. L. No. 102-537, 106 Stat. 3531 (1992). This amendment was

---

[1] This Court has also reviewed and considered the parties' submissions of supplemental authority. (*See* D.E. 35–37; 40.)

[2] Facts cited in this opinion are drawn from Defendant's Statement of Material Facts (D.E. 20-1), Plaintiff's supplemental statement of undisputed material facts (D.E. 26-2), Plaintiff's responses to Defendant's Statement (D.E. 26-1) and Defendant's responses to Plaintiff's Statement (D.E. 33-1.) Where a fact is undisputed, this Court will cite solely to the statement and not to the corresponding response.

codified at 15 U.S.C. 1681s-1.  Plaintiff alleges that Defendant violated two sections of the FCRA: 15 U.S.C. §1681e(b), which requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" of consumer information when providing a consumer report to a third-party, and 15 U.S.C. §1681i(a)(1)(A), which requires CRAs to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate," in response to a consumer's dispute.

### B.  Plaintiff's Child Support Account

Plaintiff is a New Jersey resident and is a "consumer" as that term is defined in the FCRA. (D.E. 20-1 ¶ 1.)  In 2003, the New York City Family Court ordered Plaintiff to begin making child support payments of $156.00 per week.  (*Id.* ¶ 2.)  The New York City Office of Child Support Enforcement ("OCSE") reported that Plaintiff's account was past due on several occasions over the years.  (*Id.* ¶ 5.)  Plaintiff made his last child support payment on May 30, 2017 (*Id.* ¶ 6) and the New York City Department of Social Services issued a letter on October 21, 2021 indicating that Plaintiff's account was closed with no outstanding payments.  (*Id.* ¶ 7.)

### C.  Defendant's Credit Reporting

Experian is a "consumer reporting agency" as that term is defined in the FCRA.  (*Id.* ¶ 8.) Defendant stores consumer data supplied by credit grantors, certain state and local agencies, and public record vendors, also called "furnishers."  (*Id.*)  In this instance, the New York State Division of Child Support Enforcement ("DCSE") is the "furnisher" that reported consumer data regarding Plaintiff's child support account to Defendant.  (*Id.* ¶ 11.)  The DCSE reported status codes for Plaintiff's account to Defendant, who in turn used those status codes to generate Plaintiff's credit reports.  (*See id.* ¶¶ 9–22.)    From 2017 through 2020, Defendant reported Plaintiff's account as "in Good Standing."  (D.E. 26-2 ¶ 1.)  In 2021, the DCSE began to report Plaintiff's account with other codes, which resulted in changes to the credit reports.  The parties agree that, from October

2021 to September 2023, the DCSE reported Plaintiff's account either with a "62" status code, which a furnisher may use when the account is "satisfied" but was previously in collections, or without any status code, which signified that no data was available. (D.E. 20-1 ¶ 18.) During this period, Defendant's credit reports showed the "Status" as "Paid, Closed" with a "C" (for Collection) in the "Payment history" grid for November 2021, March and April 2022, and March 2023, and an "ND" (for No data for this period) for other months after November 2021. (*Id.* ¶ 21.) Then, as of September 2023, the DCSE reported Plaintiff's account with an "11" status code, which a furnisher may use when the account has been brought current but the statute of limitations for child support judgments has not yet been reached. (*Id.* ¶ 19.) Defendant's credit report then showed the "Status" as "Open" with a "C" (for Collection) in the "Payment history" grid for November 2022 and an "ND" (for No data for this period) for other months after November 2022. (*Id.* ¶ 22.)

### D. Plaintiff's Disputes and Defendant's Reinvestigations

From October 2021 to September 2023, Defendant identified eleven disputes that it believed to be submitted directly by Plaintiff. (*Id.* ¶ 25.) In addition to these eleven disputes, Defendant received seven disputes related to Plaintiff's account that it believed to be submitted from third parties. (*Id.* ¶ 32.) For each of the eleven disputes that came directly from Plaintiff, Defendant sent an Automated Credit Dispute Verification form ("ACDV") to the DCSE, which confirmed or updated the information and certified that the information it had provided was accurate. (*Id.* ¶ 26.)

### E. Plaintiff's Alleged Damages

Plaintiff's damages are predicated on denials of financing for a dump truck and a business credit card with Chase bank, and the resulting effects on his health. The parties agree that Plaintiff

reached out to a salesman at Topmark Funding, LLC in an attempt to secure a loan for a dump truck for Plaintiff's business. (*Id.* ¶¶ 41–43.) The salesman reviewed a copy of Plaintiff's credit report, which indicated that the child support account was paid, but that it had been in collections in November 2021, March and April 2022, and March 2023. (*Id.* ¶ 44.) The salesman told Plaintiff that he was not likely to obtain funding, and referenced the child support account and a Bank of America account. (*Id.* ¶ 45.) Plaintiff never submitted a loan application to Topmark Funding, LLC. (*Id.* ¶ 46.) In February 2024, after Plaintiff filed this case, Plaintiff was denied for a Chase Visa Signature business card account with Chase bank. (*Id.* ¶ 47.) Plaintiff alleges that he has experienced anxiety and heart palpitations due to his concern about Defendant's reporting of his child support consumer information. (*Id.* ¶ 49.)

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)) The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

**IV.   DISCUSSION**

   **A. 15 U.S.C. §1681s-1.**

The gist of Defendant's argument is that the FCRA provides no independent discretion to a CRA to determine whether information received from a child support agency is accurate or not; once Defendant received information from the furnisher that Plaintiff failed to pay child support, it had no choice but to report that information. Defendant relies primarily on §1681s-1 to support its position, which provides that, "[n]otwithstanding any other provision of this subchapter, a

6

consumer reporting agency shall include in any consumer report furnished by the agency . . . any information on the failure of the consumer to pay overdue support which . . . is provided . . . to the consumer reporting agency by a State or local child support enforcement agency." 15 U.S.C. §1681s-1. This Court is unaware of, and the parties have not cited to, any precedent from the Third Circuit regarding the precise meaning of this specific provision of the FCRA. However, common canons of statutory interpretation are instructive here. The word "notwithstanding" "shows which provision prevails in the event of a clash," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017), and "[t]he word 'shall' is 'mandatory' and 'normally creates an obligation impervious to judicial discretion.'" *Scott v. Vantage Corp.*, 64 F.4th 462, 476 (3d Cir. 2023) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). Combining these two definitions, this Court concludes that a CRA must include the child support information in its report and that, if any provisions of the subchapter clash, §1681s-1 controls. The question then becomes whether there is a clash between §1681s-1 and the provisions of the FCRA that Plaintiff brings claims under.

According to Defendant, the mandate from §1681s-1 that they must report information from child reporting agencies clashes with and supersedes the requirement in §1681(e) that Defendant ensure "reasonable procedures" and the requirement in §1681(i) that Defendant "reasonably reinvestigate" inaccurate information. Plaintiff argues that the above reading can still work in tandem with the other provisions of the FCRA to allow the claims to move forward. In the absence of binding Third Circuit precedent, both parties have cited to *Berry v. Experian Info. Sols., Inc.*, a case pending in the Eastern District of Michigan in which the plaintiff is represented by the same law firm as the plaintiff here, the defendant is identical and represented by the same law firm, and the underlying facts are nearly identical to those presently before this Court. *See*

7

*Berry v. Experian Info. Sols., Inc.*, No. 22-cv-11556 (E.D. Mich. 2022). In *Berry*, the plaintiff claims that Experian reported an open child support account despite a court order abating the obligation to pay. *Berry*, 2023 WL 6316006, at *1–2 (E.D. Mich. Sep. 28, 2023). The district court in *Berry* granted a motion for judgment on the pleadings for claims under §§1681e(b) and 1681i on the grounds that "Experian was required by § 1681s-1 to report the information furnished by MCS regarding Berry's child support obligation." *Berry*, 2023 WL 6316006, at *7 (E.D. Mich. Sep. 28, 2023). The Sixth Circuit ultimately reversed and concluded that "the district court . . . erred in ending its analysis at this step." *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th Cir. 2024). Rather, the Sixth Circuit continued with a traditional analysis under §§1681e(b) and 1681i notwithstanding that it found "Experian was required to report Berry's unpaid support balance." *Id.*

This Court reads the *Berry* Sixth Circuit decision to essentially hold that there may be certain cases where the provisions of §§1681e(b) and 1681i do not clash with §1681s-1. Such an approach is sensible, as this Court can certainly envision a hypothetical case where §1681s-1's impact is unclear and a reasonableness standard is a better litmus test for liability. Therefore, while not binding, this Court adopts the Sixth Circuit's reasoning in *Berry* that, while CRAs are required to report information from child support agencies, they are not as a matter of law protected from claims under §§1681e(b) and 1681i for having done so. Rather, it is necessary to proceed to a traditional analysis under §§1681e(b) and 1681i.

**B. 15 U.S.C. §§1681e(b) & 1681i.**

Under the FCRA, a CRA must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b). The elements for a claim of negligent noncompliance under §1681e(b) are: "(1)

8

inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)). Under §1681i, after a consumer notifies a CRA of a dispute, that CRA "shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and correct any inaccuracy within 30 days. 15 U.S.C. §1681i(a)(1)(A). To succeed on a claim under §1681i(a), a plaintiff must establish: "(1) that the consumer disputed the accuracy of an item in his or her credit file; and (2) that a reasonable investigation by the agency could have uncovered the inaccuracy." *Angino v. Trans Union, LLC*, No. 17-954, 2018 WL 6042901, at *3 (M.D. Pa. Nov. 19, 2018) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)), *aff'd*, 784 F. App'x 67 (3d Cir. 2019).

Each of Plaintiff's claims first require a showing that the reported information was inaccurate. *See Angino*, 784 F. App'x at 69 (holding that plaintiffs "must show that their credit reports contain inaccurate information" to prevail on Section 1681e(b) and 1681i(a) claims). A consumer report is inaccurate "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (per curiam) (unreported) (internal citations omitted). Defendant is not moving for summary judgment on the basis that the reported information was accurate, nor could it. There are certainly inconsistencies and illogicalities that make it probable if not certain that there were, at times, inaccuracies in Plaintiff's credit reports. The pertinent inquiry is not whether the information was inaccurate, but whether the inaccuracies were due to Defendant failing to follow reasonable procedures under §1681e(b), and whether a

9

reasonable investigation would have uncovered the inaccuracies under §1681i(a). *See Anderson v. Trans Union LLC*, 367 F.Supp.2d 1225, 1236 (W.D. Wis. 2005) ("A [defendant's] obligation under the [FCRA] is to employ reasonable procedures, not perfect ones."). On the record before it, this Court finds that Plaintiff has failed to put forth a genuine issue of material fact to show either that Defendant's procedures or reinvestigation were unreasonable. Defendant was required to report Plaintiff's information and did so accurately as it was received from the DCSE. When Plaintiff raised doubts numerous times as to the accuracy of the information that the DCSE was reporting, Defendant followed up with the DCSE each time to confirm that it was accurately reporting the information. As previously acknowledged, there certainly may have been inaccuracies in the DCSE's reporting of Plaintiff's information, but to hold Defendant liable on the facts in this case would essentially turn the FCRA into a strict liability statute.

The gravamen of Plaintiff's grievances ultimately lie not with Defendant's reporting, but with the original source of the information, the DCSE. Plaintiff argues that, because the DCSE is immune from claims under the FCRA, he will be left without recourse if his claims against Defendant fail. Congress has acted to immunize state agencies under the FCRA, and the lack of an adequate defendant is not a consideration for this Court when it comes to determining Defendant's liability. Plaintiff also argues that Defendant acted unreasonably by not investigating seven additional inquiries, which Defendant's mail-sorting protocol determined came from other individuals and not Plaintiff. This Court is unpersuaded by this argument. While Defendant's mail-sorting protocol might be found unreasonable for some hypothetical case, it was not unreasonable as it relates to Plaintiff's case and claims. Plaintiff has not put forth any evidence which would plausibly suggest that these additional inquiries would have changed anything about the DCSE's reporting.

Having decided that Defendant is entitled to summary judgment on the basis of its reasonable procedures and investigations, this Court declines to address the parties' arguments with respect to damages.

V.     **CONCLUSION**

For the reasons set forth above, Defendant's MSJ is **GRANTED**.  An appropriate order follows.

  ___/s/ Susan D. Wigenton___
  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Stacey D. Adams, U.S.M.J.
        Parties

11